# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Case Number: 22-3847 (JAC)

Case Name: United States v. Eric Zevely

Name: Eric A. Zevely, # 77764-061

Address: F.C.I. Hazelton, P.O. Box 5000

City: Bruceton Mills   State: WV   Zip Code: 26525

## PRO SE APPELLANT'S BRIEF

**Directions:**  Answer the following questions about the appeal to the best of your ability. Use additional sheets of paper, if necessary, not to exceed 30 pages. Please print or write legibly, or type your answers double-spaced. You need not limit your brief solely to this form, but you should be certain that the document you file contains answers to the questions below. The Court prefers short and direct statements.

Within the date specified in the briefing letter, you should return one signed original brief to:

**United States Court of Appeals For The Sixth Circuit**
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio   45202-3988

1.  Did the District Court incorrectly decide the facts?   ☑ Yes   ☐ No

   If so, what facts?

   The District Court refused to address the claim that it lacked both personal and subject-matter jurisdiction in the underlying purported federal criminal case the Government was shown to lack enforcement of the conduct when occurring within a State, where an Article III Inferior district court Supreme Court precedent holds cannot be conferred with criminal case jurisdiction.

2.  Do you think the District Court applied the wrong law?   ☑ Yes   ☐ No

   If so, what law do you want applied?

   The law to be applied, announced by the Supreme Court in such circumstances, that challenges to subject-matter jurisdiction may be raised at any time by a defendant at any stage of the litigation, where a motion under 18 U.S.C. §3582(c) is just a stage in the litigation of the original case, and it was an abuse of discretion for the district court to reject Supreme Court admonition in this regard, that, if it had reached the merits, the conviction would have had to be reversed, and the indictment dismissed with prejudice.

3. Do you feel that there are any others reasons why the District Court's judgment was wrong?

☑ Yes　　☐ No

If so, what are they?

It's reluctance to conduct a hearing on the merits of appellant's claims in the district court, which would disclose it lacks constitutionally valid jurisdiction over criminal cases, ab initio, under the circumstances, was clearly erroneous, an abuse of discretion, and a direct violation of the courts oath to uphold the Constitution of the United States.

4. What specific issues do you wish to raise on appeal?

A district court, such as below, lacks the capacity to sit in judgment over criminal cases, and may only adjudicate "Cases, in Law and Equity," in the conjunctive, which are strictly civil in nature especially where when the United States shall be a party it is only in controversies civil in nature, and only where there is alleged by the United States, and ultimately proven, it has suffered an actual injury by the conduct of the defendant, and can be redressed by a favorable judicial decision, which does not, in any way, include criminal imprisonment, and that by so sitting in a criminal case, the district court, under the circumstances of this case, commits treason to the Constitution.

5. What action do you want the Court of Appeals to take in this case?

Either remand for a full hearing on the merits raised by appellant in the court below, or for this Court to notice the lower court's lack of jurisdiction over the criminal case, for the reasons and matters of law in the accompanying Brief in support of this Appeal, and reverse the conviction and remand with directions to dismiss the indictment.

I certify that a copy of this brief was sent to opposing counsel via U.S. Mail on the __16th__ day of ___November___, 20__22__.

Signature (Notary not required)

_Eric Nymy_ _____

RECEIVED

NOV 21 2022

DEBORAH S. HUNT, Clerk

Case Number: 22-3847 (JAC)

United States Court of Appeals
for the Sixth Circuit

United States of America,
                    Appellee,

Originating Case No.: 2:18-cr-00173-1

V.

Eric A. Zevely,
                    Appellant.

Memorandum of Points and Authorities
In Support of Pro Se
Appellant's Brief

Our Nation, under the Constitution of the United States, was formed under the principle that "[T]he powers delegated by the ... Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." *The Federalist No. 45* (J. Madison). *See, also, United States v. Lopez*, 514 U.S. 549, 552 (1995)(same).

Explaining the reasoning behind Mr. Madison's declaration, supra, the Court, citing *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1891), pointed out:

> "This constitutionally mandated division of authority "was adopted by the Framers to ensure protection of our fundamental liberties." ... "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Ibid.*"

*Lopez, Ibid.*

Making clear where from the Government's powers come from, the Court, with Mr. Justice William Johnson delivering the unanimous opin-

-1-

ion of the Court, admonished:

> "The powers of the general government are made up of con-
> cessions from the several states; whatever is not expressly given
> to the former, the latter expressly reserve. The judicial power of
> the United States is a constituent part of those concessions; that
> power is to be exercised by courts organized for the purpose, and brought
> into existence by an effort of the legislative power of the Union. Of
> all the courts which the United States may, under their general powers,
> constitute, one only- the Supreme Court- possesses jurisdiction derived im-
> mediately from the constitution, and of which the legislative power can-
> not deprive it. All other courts created by the general government pos-
> sess no jurisdiction but what the power ceded to the general government
> will authorize them to confer."

<u>United States v. Hudson</u>, 7 Cranch 32, 33 (1812).

Chief Justice Marshall made it a point to declare:

> "The powers of the legislature are defined and limited; and that
> those limits may not be mistaken, or forgotten, the constitution is
> written. To what purpose are powers limited, and to what pur-
> pose is that limitation committed to writing, if these limits
> may, at any time, be passed by those intended to be restrained?
> The distinction between a government with limited and unlimited
> powers is abolished, if those limits do not confine the persons
> on whom they are imposed, and if acts prohibited and acts al-
> lowed, are of equal obligation."

<u>Marbury v. Madison</u>, 1 Cranch 137, 176-177 (1803).

Mr. Justice Brewer made clear, and admonished:

> "The Constitution is a written instrument. As such, its mean-
> ing does not alter. That which it meant when adopted, it means
> now. ... Those things which are within its grants of power, as
> those grants were understood when made, are still within them;
> and those things not within them remain still excluded."

<u>South Carolina v. United States</u>, 199 U.S. 437, 448-449 (1905).

And that is why:

> "The object of construction, applied to a Constitution, is to give ef-
> fect to the intent of its framers, and of the people in adopting it. This
> intent is to be found in the instrument itself; and when the text of
> a constitutional provision is not ambiguous the courts, in giving
> construction thereto, are not at liberty to search for its meaning

beyond the instrument."

Lake County v. Rollins, 130 U.S. 662, 670 (1889).

And "[I]f the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right," nor the power, "to add to it or take from it," Ibid, (citations omitted).

In a dissenting opinion, Mr. Chief Justice Melville W. Fuller, quoting what has been written, in Marbury, supra, and quoting Yick Wo v. Hopkins 118 U.S. 356 (1885), wrote, in relevant part:

"'Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts, And the law is the definition and limitation of power."
"*****
"The powers delegated by the people to their agents are not enlarged by the expansion of the domain within which they are exercised. When the restriction on the exercise of a particular power by a particular agent is ascertained, that is an end of the question,
"To hold otherwise is to overthrow the basis of our constitutional law, and moreover, in effect, to reassert the proposition that the States, and not the people, created the government."

Downes v. Bidwell, 182 U.S. 244, 359 (1901)(in relevant parts, citation omitted)(Fuller, C.J., with whom Harlan, Brewer, and Peckham, JJ., concur, dissenting).

In United States v. Butler, 297 U.S. 1 (1936), the Court reiterated, and poignantly admonished:

"The Constitution is the supreme law of the land ordained and established by the people. All legislation must conform to the principles it lays down. When an act of Congress is appropriately chal-

-3-

lenged in the courts as not conforming to the constitutional mandate the judicial branch of the Government has only one duty, — to lay the article of the Constitution which is invoked beside the the statute which is challenged and to decide whether the latter squares with the former, —

"The only power it has, if such it may be called, is the power of judgment. This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends.

"The question is not what power the federal Government ought to have but what powers in fact have been given by the people. It hardly seems necessary to reiterate that ours is a dual form of government; that in every state there are two governments, — the state and the United States. Each State has all governmental powers save such as the people, by their [state] Constitution, have conferred upon the United States, denied is in accordance with, or reserved to themselves. The federal union is a government of delegated powers. It has only such as are expressly conferred upon it and as are reasonably to be implied from those granted." [1]

_Id._, 297 U.S., 62–63.

With the foregoing introductory Supreme Court cases, in declaration of the limits the Constitution imposes upon the Federal Government, establishing the limits on the "police power" on Congress — thus the United States —, appellant will demonstrate the absence of Congress' power to legislate, for nationwide application, the "precise subject-matter" charged in this case, and, even more important, Congress' want of constitutional power to confer upon "inferior" constitutional Article III courts with jurisdiction over criminal cases committed, especially, within the States — all based on Supreme Court precedents.

### I. Federal Criminal Statutes Are Territorial In Applicability And Do Not Extend Into The Territory Of The States

The Supreme Court, in _United States v. Flores_, 289 U.S. 137 (1933), has found that "criminal jurisdiction of the United States is wholly

statutory," _id._, at 151, yet, "the criminal jurisdiction of the United States is in general based on the territorial principle, and criminal statutes of the United States are not by implication given an extra-territorial affect." _Id._, at 155 (citations omitted).

To illustrate this principle, the _Flores_ Court gave the following two examples:

> "It is true that in _United States v. Bevans_, 3 wheat, 336, 4 Led, 404, the prisoner, charged with murder on a warship in Boston Harbor, was discharged, as was one charged with manslaughter committed on a vessel on a Chinese river in _United States v. Wiltberger_, 5 wheat 76, 5 Led, 37. But the judgments were based not upon a want of power in Congress to define and punish the crimes charged, but upon the ground that the statute did not apply, in the one case, for the reason that the place of the offense was not out of the jurisdiction of a State, and in the other, because the offense, manslaughter was not committed on the high seas."

_Id._, 289 U.S. 152.

In other words, "Congress has a right to punish murder in a fort or other place within its exclusive jurisdiction; but no general right to punish murder committed within any of the states." _Cohens v. Virginia_, 6 wheat. 264, 426 (1821).

In _New Orleans v. United States_, 10 Pet 662 (1836), the Court, expounding on the limits Article I, §8, Cl. 17, places on the United States, where cession by the State is required to confer jurisdiction on the United States, made clear:

> "Special provision is made in the Constitution for the cession of jurisdiction from the States over places where the federal government shall establish forts or other military works. And it is only in these places, or in the territories of the United States, where it can exercise a general jurisdiction."

*Id.,* 10 Pet., at 737.

That only the United States may impose its laws upon a territory of the United States was pointed out in <u>Shively v. Bowlby</u>, 152 U.S. 1 (1894), with the Court writing:

> "By the Constitution, as is now well settled, the United States, having rightfully acquired the territories, and being the only government which can impose laws upon them, have the entire dominion and sovereignty: national and municipal, Federal and state, over all the territories, <u>so long as they remain in a territorial condition.</u>"

*Id.,* 152 U.S. 48 (citations omitted, emphasis added).

But, "upon the admission of a State into the Union, the state doubtless acquires general jurisdiction, civil and criminal, for the preservation of public order and the protection of persons and property throughout its limits, except where it has ceded exclusive jurisdiction to the United States, the rights of local sovereignty, ... vest in the State, and not in the United States." <u>Van Brocklin v. Anderson</u>, 117 U.S. 151, 167-168 (1886) (citations omitted).

And that's not the only consequence, as the Court pointed out, in <u>Bird v. United States</u>, 187 U.S. 118 (1902), where the Court, citing an earlier case, found "there was a transfer of sovereignty; a territory became a state, and it was held "the territorial government ceased to exist and all the authority under it, including the laws organizing its courts of justice," 187 U.S. 124, and especially over criminal offenses, which will be discussed, <u>infra</u>, in this Memorandum, making federal enforcement of the federal criminal laws within the States totally verboten, where Article III, § 2, does not reach criminal cases, unless the offense

- 6 -

is committed within a federal enclave, or in the District of Columbia, as the Supreme Court, citing Keller v. Potomac Electric Power Co., 261 U.S. 428 (1923), made clear, that Congress "possesses a dual authority over the District and may clothe the courts of the District not only with jurisdiction and powers of federal courts in the several States," which is limited to "Cases, in Law and Equity" civil in nature, as will be discussed infra, "but with such authority," and jurisdiction, "as a State may confer on her courts," meaning criminal case jurisdiction." O'Donoghue v. United States, 289 U.S. 516, 545 (1933) (citation omitted).

Speaking directly of the applicability of the federal criminal only in bona fide territories of the United States, the inference by the Supreme Court is clear:

> "This statute is one of universal application within the territorial limits of the United States, and is not limited to those portions which are within the exclusive jurisdiction of the National government, such as the District of Columbia. Generally speaking, within any state of this Union the preservation of the peace and the protection of person and property are the functions of the state government, and are no part of the primary duty, at least, of the nation. The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."

Caha v. United States, 152 U.S. 211, 215 (1894).

The federal offense, in Caha, supra, was "the crime of perjury committed on January 3, 1890, in the land office at Kingfisher, Oklahoma," id., at 212, which was not yet a State, but within "the United States judicial district of Kansas," id., at 216, and still considered a territory until November 16, 1907, when it [Oklahoma] entered the Union

-7-

as a State, on an equal footing as all other States. *See, e.g., PPL Montana, LLC v. Montana,* 132 S.Ct 1215, 182 L.Ed.2d 77, 91 (2012) (citations omitted) (discussing "the "equal-footing" doctrine, under which a State' title to these lands was "conferred not by Congress but by the Constitution itself")).

In this case, therefore, "[I]t follows that when a place is within the boundary, it is a part of the territory of a State; title, jurisdiction, and sovereignty, are inseparable incidents, and remain so till the State makes some cession." *Rhode Island v. Massachusetts,* 12 Pets 657, 733 (1838).

Since, in this case, *sub judice,* appellant was not on any land to which the State of Ohio had ceded to the united states, in continuing this argument, the Court's dicta is relevant:

> "The plain language of this court in *The United States v. Bevans,* 3 wheat. 386, et seq., saves the necessity of any reasoning on this subject. The question is put by the court—"what, then, is the extent of jurisdiction which a State possesses?" We answer, without hesitation, the jurisdiction of a State is co-extensive with its territory, co-extensive with its legislative power. The place described is unquestionably within the original territory of Massachusetts. It is, then, within the jurisdiction of Massachusetts, unless that jurisdiction has been ceded to ("by") the united States." *Ib,* 387. "A cession of territory is essentially a cession of jurisdiction. *Ib,* 388. Still the general jurisdiction over the place, subject to this grant of power (to the United States), adheres to the territory as a portion of sovereignty not yet given away." *Ib,* 389.

*Id,* 12 Peters, at 233.

With federal courts obligated to take judicial notice of State Constitutions and laws, *Baldwin's Ohio Revised Code,* Annotated, Chapter 159, §§ 159,01, and 159,03, is in accord with U.S.Const, Art.I, § 8, cl. 17, that limits the united States' exercise of general jurisdiction only over such lands ceded, by consent of the State of Ohio, to the united States,

Case: 22-3847    Document: 7    Filed: 11/21/2022    Page: 11

and not otherwise. See Baldwin's Ohio Revised Code, Annotated, 1953, Chapter 159, attached hereto.

Although the case of Arizona v. United States, 132 s.ct. 2492 (2012), falls within the "classes" of "Controversies to which the United States shall be a Party," U.S. Const, Art. III, §2, cl.1, involving a controversy between a State and the United States, dicta from that case is very apropos to apply in this appeal, when it comes to federal criminal conduct committed within a State, and divests the United States from intruding into the accepted sovereignty of a State and its own criminal laws: "Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." Id., 132 s.ct., at 2500 (citations omitted).

Naturally when it comes to having jurisdiction over crimes, and especially over federal offenses this brief demonstrates the United States want of jurisdiction when occurring within a State, "[n]either consent nor submission by the States can enlarge the powers of Congress; none can exist except those which are granted," Ashton v. Cameron County W. I. Dist. No. One, 298 u.s. 513, 531 (1936) (citation omitted).

Therefore, the enforcement, by the United States, of its federal criminal laws, for conduct not within the "precise subject-matter" the Framers did not include for federal enforcement within the States, violates all principles of federalism, and requires the reversal of the conviction by this Court, on appeal, and remand with instructions

-9-

to dismiss the bill with prejudice. <u>United States v. Corrick</u>, 298 U.S. 435, 440 (1936);

   II.  Appellant has standing to challenge his conviction at any point in the litigation, where Congress has not precluded such challenges in a motion under 18 U.S.C. § 3582, where the <u>Government never had Article III standing to prosecute this case.</u>

The following dicta by the Supreme Court says it all, and is relevant in this appeal:

   "To reach the merits of a case, an Article III court must have jurisdiction, "one essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." ... The three elements of standing, this Court has reiterated, are (i) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision. ... Although rulings on standing often turn on a plaintiff's stake in initially filing suit, "Article III demands that an 'actual controversy' persist throughout all stages of litigation." ... The standing requirement therefore "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." ... As a jurisdictional requirement, standing to litigate cannot be waived or forfeited. And when standing is questioned by a court or an opposing party, the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm. ... To cross the standing threshold, the litigant must explain how the elements essential to standing are met."

<u>Va. House of Delegates v. Bethune-Hill</u>, 139 S.Ct. 1945, 1950-1951 (2019) (citations omitted).

   With the United States, in this case, being the plaintiff, it must also, in order to meet the standing requirements, establish that it is a victim to appellant's purported tortious conduct aimed, precisely, toward the United States. It can't, as Supreme Court case law, which is the law of the land, will demonstrate.

-- 10 --

In pointing out that the "judicial Power" of the United States does not extend to criminal cases, and explaining the standing requirements a plaintiff must demonstrate, the Court wrote:

> "Article III, §2, of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies," we have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process. ... Such a meaning is fairly implied by the text, since otherwise the purported restriction upon the judicial power would scarcely be a restriction at all. Every criminal investigation conducted by the Executive is a "case," and every policy issue resolved by congressional legislation involves a "controversy." These are not, however, the sort of cases and controversies that Article III, §2, refers to, since "the Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts. ... Standing to sue is part of the common understanding of what it takes to make a justiciable case. ...
> "The "irreducible constitutional minimum of standing" contains three requirements. ... First and foremost, there must be alleged (and ultimately proved) an "injury in fact" — a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" ... Second, there must be causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendants. ... And third, there must be redressability — a likelihood that the requested relief will redress the alleged injury. ... This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."

<u>Steel Co. v. Citizens For A Better Env't</u>, 523 U.S. 83, 102–104 (1998) (citations omitted).

With Article III, §2, making no reference to the "judicial Power" extending to "criminal" cases, the district court below, "presumed to know the law," <u>Walton v. Arizona</u>, 497 U.S. 639, 653 (1990), and federal prosecutors, "trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment,"

-11-

_Connick v. Thompson_, 563 U.S. 51, ——, 179 L.Ed.2d 417, 429 (2011)(emphasis added), it is reasonable to say both the federal prosecutors and district court judge "knew or reasonably should have known that the action [they] took within the sphere of official responsibility," the prosecution charging conduct not a "precise subject-matter" enumerated in the Constitution for nationwide federal enforcement, _see_, _Keller v. United States_, 213 U.S. 138, 146 (1909)(citations omitted), "would violate the constitutional rights of the" appellant. _Harlow v. Fitzgerald_, 457 U.S. 800, 815 (1982)(quotation marks and citation omitted).

It must be presumed both the prosecutors and district judge knew what Mr. Justice Sutherland, writing for the Court, instructed:

> "We first direct attention to the carefully chosen words of §2, cl. 1, Art. 3. By that clause the judicial power is extended to all cases in law and equity arising under the Constitution, etc.; to all cases affecting ambassadors, other public ministers and consuls; and to all cases of admiralty and maritime jurisdiction. Then the comprehensive word "all" is dropped, and the enumeration continues in terms to apply to controversies (but not to "all") to which the United States shall be a party;"

_Williams v. United States_, 289 U.S. 553, 572 (1933).

Finding that there exist only "nine separately enumerated classes of cases to which "judicial power" was extended by the Constitution and which thereby authorized grants by Congress of "judicial power" to the "inferior" federal courts," _Romero v. Int'l Term. Operat. Co._, 358 U.S. 354, 364 (1959), such as the district court below.

Although the provisions of the Constitution allow Congress to create both legislative courts, pursuant to Article I, and constitutional courts, pursuant to Article III, Section 1, as the Supreme Court pointed out:

-12-

Case: 22-3847    Document: 7    Filed: 11/21/2022    Page: 15

"But there is a difference between the two classes of courts. Those established under the specific power given in §2 of article 3 are called constitutional courts. They share in the exercise of the judicial power defined in that section, can be vested with no other jurisdiction, '''' with no power in Congress to provide otherwise."

*Ex parte Bakelite*, 279 U.S. 438, 449 (1929).

The only exception to the rule was discussed in *O'Donoghue, Supra,* where the Court explained: "Over this District [of Columbia] Congress possesses "the combined powers of a general and of a State government in all cases where legislation is possible."" *Id*, 289 U.S. 539 (citation omitted, emphasis added).

In expounding upon this principle, in regard of the dual authority of Congress has in conferring even criminal jurisdiction upon the constitutional Article III courts within the District of Columbia, the Court made clear:

"There is no inhibition in the Constitution against the exercise by Congress of this dual power, arising as it does out of an express grant in the one case (article 3) and an implied grant in the other (article 1, §8), nor does its exercise in the one case exhaust its power and prevent its exercise in the other, and therefore we assume, when Congress created the two courts—the District Courts of the United States and the Supreme [now Superior] Court of the District of Columbia—and gave to each, within its own sphere, identical jurisdiction, that it drew its power from the same source, even though it was necessary it should have recourse to another provision of the Constitution in order to clothe the courts at the seat of government with other and additional authority [criminal jurisdiction] not permissible under article 3."

*Id*, 289 U.S. 547-548 (quotation marks and citation omitted, emphasis added).

And to make plain that such dual authority of Congress applies only to the district courts of the United States sitting in the District

−13−

of Columbia, the Court concluded its opinion, observing "that Congress derives from the District clause," Art. I, § 8, cl. 17, "distinct powers in respect of the constitutional courts of the District which Congress does not possess in respect of such courts outside the District." Id. 289 U.S., at 551 (citation omitted).

This all comes down to making sure courts, and prosecutors, stay within the boundaries the Framers placed in the Constitution, since, as was made perfectly clear: "Constitutional limitations are placed on government to preserve constitutional values in hard cases like these, "[C]onstitutional lines have to be drawn, and on one side of every one of them is an otherwise sympathetic case that provokes impatience with the Constitution and with the line. But constitutional lines are the price of constitutional government." Zelman v. Simmons-Harris, 536 U.S. 639, 686 (2002)(citation omitted)(Souter, J, with whom Steven, Ginsburg, and Breyer, JJ., join, dissenting).

As a sister Circuit has written: "the significance of the issue is that "jurisdictional" defects cannot be waived and are not subject to procedural defaults." Sapia v. United States, 433 F.3d 212, 216 (2d Cir. 2004)(citation omitted).

Paraphrasing dicta by the Supreme Court, appellant, "however, does not advance a procedural due process claim in this case. Instead, [s]he relies on the substantive component of the Clause that protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them,"" Collins

v. Harker Heights, 503 U.S. 115, 125 (1992) (citation omitted).

A more concise explanation of this principle was given by the Court, in McIntyre Mach., Ltd. v. Nicastro, 131 S.Ct. 2780 (2011), with the Court admonishing:

> "The Due Process Clause protects an individual's right to be deprived of life, liberty, or property only by the exercise of lawful power. ...
>
> "First, personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct directed at society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct. Personal jurisdiction, of course, restricts "judicial power not as a matter of sovereignty, but as a matter of individual liberty," for due process protects the individual's right to be subject only to lawful power. ... But whether a judicial judgment is lawful depends on whether the sovereign has authority to render it."

Id., 131 S.Ct., at 2786, 2789 (citations omitted).

Supreme Court case law precedents, cited in this appeal, can be interpreted in no other way but that the federal sovereign, with its "powers delegated by the ... Constitution" being "few and defined," The Federalist No. 45, supra, lacks constitutionally lawful power to have prosecuted appellant, ab initio, for the reasons and matters of law cited herein, and mandates this Court "to make good the wrong done" in the district court below, Bell v. Hood, 327 U.S. 678, 684 (1946) (quoted in Franklin v. Gwinnett Cy. Pub. Schools, 503 U.S. 60, 66 (1992)), especially "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." The Court has "required this heightened showing in part to avoid the "serious constitutional

-15-

Case: 22-3847    Document: 7    Filed: 11/21/2022    Page: 18

question" that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." _Webster v. Doe_, 486 U.S. 529, 603 (1988)(citations omitted).

As the Court has emphasized, "the word "jurisdictional" is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." _Fort Bend County v. Davis_, 139 S. Ct. 1843, 1848 (2019) (citations omitted).

"Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant "at any point in the litigation," and courts must consider them sua sponte," _Id._, 139 S.ct. 1849 (citation omitted), because subject-matter jurisdiction is non-waivable, and "must be raised by courts sua sponte, and, as relevant to this case, do not allow for equitable exceptions." _Boechler, P.C. v. Comm'r_, 142 S.ct.___, 212 L.Ed.2d 524, 530 (April 21, 2022) (citation omitted).

The wrong committed below must be made right by this Court in this appeal, by reversing the void federal criminal conviction below, and order the dismissal of the bill of indictments _Corrick_, _supra_.

## Conclusion

Relief in this appeal is required, because for this Court "to perform its high function in the best way, justice must satisfy the appearance of justice," _In re Murchison_, 349 U.S. 133,

-16-

136 (1955) (citation omitted); by reversing the district court's judgment of conviction, and directing the dismissal, with prejudice, the bill of indictment.

Dated: _November 16_____, 2022.

Respectfully submitted,

_Eric_____

Eric A. Zevely # 77764-061
Appellant pro se
Federal Correctional Institution - Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

## Certificate of Service

I hereby certify that a copy of the foregoing Pro Se Appellant's Brief, and Memorandum in Support was served, by first-class mail, postage prepaid, on this _16th_ day of November, 2022, on:

The United States Attorney
303 Marconi Blvd, Ste. H200
Columbus, OH 43215

_Eric_____

Eric A. Zevely, Appellant pro se.

54-0107. *Legislative consent to purchase of lands by United States; jurisdiction.*—The legislative assembly consents to the purchase for the United States of any tract within this state for the purpose of erecting forts, magazines, arsenals, and other needful buildings, upon the express condition that all civil process issued from the courts of this state, and such criminal process as may issue under the authority of this state against any person charged with crime, may be served and executed thereon in the same manner and by the same officers as if the purchase or condemnation had not been made.

54-0108. *Jurisdiction ceded to lands acquired by United States for military post.*—Jurisdiction is ceded to the United States over any tract of land that may be acquired by the United States on which to establish a military post. Legal process, civil and criminal, of this state, shall extend over all land acquired by the United States to establish a military post in any case in which exclusive jurisdiction is not vested in the United States, and in any case where the crime is not committed within the limits of such reservation.

Baldwin's Ohio Revised Code, Annotated, 1953, chapter 159, sections—

OHIO

159.01. (13768.) *Acquisition of title to land by United States.*—Whenever it is necessary for the United States to acquire title to a tract of land in this state for any purpose, and the state gives its consent to such acquisition, the United States may acquire such land by appropriation, and for such purpose the "Act prescribing the mode of assessment and collection of compensation to the owners of private property appropriated by and to the use of corporations," passed April 23, 1872, and all acts amendatory thereof, are hereby made applicable, and said United States, in appropriating such property, shall, in all respects, be governed by the acts referred to in this section, and such other acts supplemental thereto and amendatory thereof as may be in force when such proceedings take place; provided that the United States may pay the cost, including such reasonable attorney fees as are allowed by the court, to the person whose property is sought to be appropriated, and refuse to make the appropriation, if in their judgment the compensation assessed is too great to justify the appropriation.

159.03. (13770.) *Consent of state given to acquisition by United States of land required for Government purposes.*—The consent of the state is hereby given, in accordance with clause 17, Section 8, Article I, United States Constitution, to the acquisition by the United States, by purchase, condemnation, or otherwise, of any land in this

state required for sites for custom houses, courthouses, post offices, arsenals, or other public buildings whatever, or for any other purposes of the government.

159.04 (13771.) *Exclusive jurisdiction over land ceded to the United States; exceptions.*—Exclusive jurisdiction in and over any land acquired by the United States under section 159.03 of the Revised Code is hereby ceded to the United States, for all purposes except the service upon such sites of all civil and criminal process of the courts of this state. The jurisdiction so ceded shall continue no longer than the said United States owns such lands.

159.05 (13772.) *Jurisdiction shall vest; voting.*—The jurisdiction ceded under section 159.04 of the Revised Code shall not vest until the United States has acquired title to the lands by purchase, condemnation, or otherwise. As long as the lands remain the property of the United States they are exempt and exonerated from all state, county, and municipal taxation, assessment, or other charges which may be levied or imposed under the authority of this state. Sections 159.03 to 159.06, inclusive, of the Revised Code do not prevent any officers, employees, or inmates of any national asylum for disabled volunteer soldiers located on any such land over which jurisdiction is ceded, who are qualified voters of this state from exercising the right of suffrage at all township, county, and state elections in any township in which such national asylum is located.

Chapter 3503, section—

3503.03 (4786-32). *Inmates of soldier's homes.*—Infirm or disabled soldiers who are inmates of a national home for such soldiers, who are citizens of the United States and have resided in this state one year next preceding any election, and who are otherwise qualified as to age and residence within the county and township shall have their lawful residence in the county and township in which such home is located.

OKLAHOMA

Oklahoma Statutes Annotated, title 29, section—

§ 604. *National Forest Lands—Rules and regulations of Federal Government.*—The consent of the State of Oklahoma be and hereby is given to the making by Congress of the United States or under its authority, of all such rules and regulations as the Federal Government may determine to be needful in respect to game animals, game and non-game birds and fish on or in and over National Forest Lands within the State of Oklahoma. Laws 1951, p. 90, § 604.

Title 80, sections—

§ 1. *State's consent to acquisition of lands by United States.*—The consent of the State of Oklahoma is hereby given, in accordance with



A. Zevely, #77764-061
al Correctional Institution - Hazelton
Box 5000
eten Mills, WV 26525

RECEIVED
NOV 21 2022
JOHN S. HURLEY, CLERK
Legal Mail

Legal Mail

Clerk, United States Court of Appeals
For The Sixth Circuit
100 East Fifth Street, Ste. 540
Cincinnati, OH 45202